**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sally Ann Johnson, ) | CIV 14-1057-PHX-MHB |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Carolyn W. Colvin, Commissioner of the ) Social Security Administration, ) | |
| Defendant. ) | |

Pending before the Court is Plaintiff Sally Ann Johnson's appeal from the Social Security Administration's final decision to deny her claim for disability insurance benefits. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

Plaintiff filed an application for disability insurance benefits in March 2011, alleging disability beginning August 17, 2010. (Transcript of Administrative Record ("Tr.") at 21, 151-52.) Her application was denied initially and on reconsideration. (Tr. at 92-94, 100-02.) Thereafter, Plaintiff requested a hearing before an administrative law judge, and a hearing was held on September 25, 2012. (Tr. at 35-66.) On November 30, 2012, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. at 18-34.) The Appeals Council denied Plaintiff's request for review (Tr. at 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21.

## III.  THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4)  if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

(5)  if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920).  At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work.  See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 17, 2010 – the alleged onset date.  (Tr. at 23.)  At step two, she found that Plaintiff had the following severe impairments: a major depressive disorder, generalized anxiety disorder, panic disorder without agoraphobia, and attention-deficit hyperactivity disorder.  (Tr. at 23.)  At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations.  (Tr. at 23-24.)  After consideration of the entire record, the ALJ found that Plaintiff retained "the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember and carry out simple and detailed work tasks.  She should not work in a team.  She can work objects or data."[1]  (Tr. at 24-28.)  The ALJ determined that Plaintiff is unable to perform any past relevant work, but that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (Tr. at 28-29.)

Therefore, the ALJ concluded that Plaintiff "has not been under a disability ... from August 17, 2010, through the date of [her] decision."  (Tr. at 29.)

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

- 3 -

## IV. DISCUSSION

In her brief, Plaintiff contends that the ALJ erred by: (1) failing to properly consider her subjective complaints; (2) failing to properly weigh medical source opinion evidence; (3) failing to fully develop the record by declining to subpoena a state agency reviewing psychological consultant; (4) failing to properly consider lay witness testimony; and (5) failing to properly consider whether Plaintiff could perform a significant number of jobs in the national economy. Plaintiff requests that the Court remand for determination of benefits.

### A.     Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ erred in rejecting her subjective complaints in the absence of clear and convincing reasons for doing so.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1037 (citations omitted). General assertions that the claimant's testimony is not credible are insufficient. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Id. (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek

- 4 -

treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn v. Astrue, 495 F.3d 624, 637-39 (9th Cir. 2007).[2] The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms ... ." Smolen, 80 F.3d at 1284 (citation omitted).

Plaintiff suffers from panic attacks. She explained she did not know what a panic attack was until after she had a severe one and was unable to return to work. She now has panic attacks four or five times each day, and feels as if she will pass out. (Tr. at 42.) Plaintiff's panic attacks last about 15 minutes, and she will isolate herself until it passes. Stress increases panic, and sometimes Plaintiff will break out in hives. (Tr. at 43.) During a typical day, Plaintiff experiences racing thoughts and depression. She does not like to be around other people and avoids going out in public. She has good and bad days. On bad days she will cry a lot and does not want to see anyone. This happens about 6 days each week. (Tr. at 44.) Plaintiff has canceled a few medical appointments because she was having a bad day and could not leave the house. She has a roommate who does most of the grocery shopping. Plaintiff has walked out of the grocery store and left her items because of panic. (Tr. at 45.)

Plaintiff discussed her erratic sleep patterns. She takes a one hour nap a couple of times each week. She has difficulty concentrating and tends to start tasks and not finish them. (Tr. at 46.) Dyslexia makes it difficult for Plaintiff to read, and she almost missed an

---

[2] With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication. See id.

- 5 -

1 appointment because she read the numbers for the address backwards. (Tr. at 47.) Plaintiff
2 has had to change mental health doctors because of insurance and financial problems. (Tr.
3 at 48-49.) She is not entirely sure how often she had panic attacks in the past because she
4 did not know what panic attacks were until later. (Tr. at 52.) When Plaintiff changed
5 doctors, she also had to change medication. She has yet to find a combination of mediation
6 that works as well as the ones prescribed by her doctor. (Tr. at 53.)

7 Having reviewed the record along with the ALJ's credibility analysis, the Court finds
8 that the ALJ made sufficient credibility findings and identified several clear and convincing
9 reasons supported by the record for discounting Plaintiff's statements regarding her pain and
10 limitations. Although the ALJ recognized that Plaintiff's medically determinable
11 impairments could reasonably be expected to cause the alleged symptoms, she also found that
12 Plaintiff's statements concerning the intensity, persistence, and limiting effects of the
13 symptoms were not fully credible. (Tr. at 25-27.)

14 The ALJ first addressed the objective medical evidence noting that the "objective
15 medical evidence does not indicate that the claimant's impairments are disabling,"
16 particularly as Plaintiff "exhibited good mental status during multiple office visits." (Tr. at
17 26.) Despite allegations of debilitating panic attacks, depression, and social difficulties,
18 Plaintiff appeared calm, cooperative, and fully oriented during a June 2010 psychiatric
19 treatment visit. (Tr. at 25, 432.) Subsequently, in a February 2011 office visit, Plaintiff did
20 not exhibit any phobias, fears, compulsions, or thought disorder. (Tr. at 25, 272-74.) Three
21 months later, in May 2011, Plaintiff appeared polite and cooperative, with a thought process
22 that was appropriate to content. (Tr. at 26, 283.) A month later, Plaintiff informed her
23 physician she was "doing well." (Tr. at 26, 345.) By September 2011, Plaintiff reported, "I
24 am doing really good. I think that this medication is working." (Tr. at 26, 298.) She
25 explained her mood was good, her concentration was better, and her memory was "fine."
26 (Tr. at 26, 298.) Significantly, she also reported she was not experiencing panic attacks. (Tr.
27 at 26, 298.) On examination, she had satisfactory attention span, intact thought content, and
28 euthymic affect. (Tr. at 298.) As the ALJ discussed in his decision, subsequent treatment

1  reports continued to demonstrate Plaintiff had generally unremarkable mental status findings,
2  including calm and cooperative presentation, affect appropriate to content, and Plaintiff's
3  own reports that she was doing "better." (Tr. at 26, 417, 430.) Further, the ALJ noted that
4  treating mental health clinicians routinely reported Plaintiff had global assessment of
5  functioning (GAF) scores in the 60s and 70s range, "indicating a high degree of functioning."
6  (Tr. at 26.) In June 2010, for example, a clinician assessed Plaintiff with a GAF score of 60.
7  (Tr. at 25, 433.) Thereafter, in September 2011, a clinician reported Plaintiff had a GAF
8  score of 70. (Tr. at 26, 298.) In March 2012, a clinician indicated Plaintiff had a GAF score
9  of 75. (Tr. at 26, 426.) An ALJ may discredit a claimant's allegations if they are
10 inconsistent with the objective medical evidence. See Bray v. Comm'r of Soc. Sec. Admin.,
11 554 F.3d 1219, 1227 (9th Cir. 2009).

12         Next, the ALJ discredited Plaintiff's allegations because Plaintiff "was inconsistent
13 regarding the severity of her mental impairments." (Tr. at 26.) "One strong indication of the
14 credibility of an individual's statements is their consistency, both internally and with other
15 information in the case record." Social Security Ruling (SSR) 96-7p, available at 1996 WL
16 374186, at *5. Accordingly, an ALJ "may engage in ordinary techniques of credibility
17 evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in
18 claimant's testimony." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005). At the hearing,
19 Plaintiff testified she experienced panic attacks four to five times daily, with each episode
20 lasting from 15 to 20 minutes. (Tr. at 25, 42-43.) Yet, as the ALJ noted (Tr. at 26), Plaintiff
21 informed a clinician that she experienced panic attacks only "once a month" and with each
22 episode "lasting five to ten minutes[.]" (Tr. at 257.) At the hearing, Plaintiff also testified
23 her symptoms were of such severity she was unable to shop for groceries in stores. (Tr. at
24 27, 45.) But at odds with such testimony, Plaintiff informed a clinician that she had no
25 deficits in her activities of daily living. (Tr. at 27, 441.) In fact, in a function report
26 submitted prior to the hearing, Plaintiff explained she shopped in grocery stores twice a
27 week. (Tr. at 27, 183.)

28

1    The ALJ also found that Plaintiff provided inconsistent reports regarding her drug and
2 alcohol use. (Tr. at 27.) In April 2011, Plaintiff informed a treating physician she drank
3 once or twice each week. (Tr. at 27, 269.) However, in a questionnaire completed only one
4 month later, in May 2011, Plaintiff denied using alcohol or drugs. (Tr. at 27, 189.)
5 Thereafter, in November 2011, Plaintiff again provided inconsistent statements when she
6 informed a clinician that she drank alcohol three to four times a week. (Tr. at 27, 387.)

7    Lastly, in evaluating Plaintiff's credibility, the ALJ analyzed Plaintiff's activities of
8 daily living. "[I]f the claimant engages in numerous daily activities involving skills that
9 could be transferred to the workplace, an adjudicator may discredit the claimant's allegations
10 upon making specific findings relating to the claimant's daily activities." Bunnell v.
11 Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (citing Fair, 885 F.2d at 603); see Berry v. Astrue,
12 622 F.3d 1228, 1234-35 (9th Cir. 2010) (claimant's activities suggested a greater functional
13 capacity than alleged). The ALJ found that Plaintiff "has described daily activities which are
14 not limited to the extent one would expect, given the complaints of disabling symptoms and
15 limitations." (Tr. at 27.) As noted by the ALJ, Plaintiff testified she experienced frequent
16 and debilitating panic attacks that prevented her from shopping in stores. (Tr. at 25, 42-43.)
17 Yet, the record evidence indicates Plaintiff was able to drive a car and shop in grocery stores
18 twice weekly. (Tr. at 27, 183.) Plaintiff was also independent with self-care, prepared meals,
19 and performed household chores. (Tr. at 27, 181-82.)

20    While not alone conclusive on the issue of disability, an ALJ can reasonably consider
21 a claimant's daily activities in evaluating the credibility of his subjective complaints. See,
22 e.g., Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (upholding ALJ's
23 credibility determination based in part of the claimant's abilities to cook, clean, do laundry,
24 and help her husband with the finances); Burch, 400 F.3d at 680-81 (upholding ALJ's
25 credibility determination based in part on the claimant's abilities to cook, clean, shop, and
26 handle finances).

27    In summary, the Court finds that the ALJ provided a sufficient basis to find Plaintiff's
28 allegations not entirely credible. While perhaps the individual factors, viewed in isolation,

1  are not sufficient to uphold the ALJ's decision to discredit Plaintiff's allegations, each factor
2  is relevant to the ALJ's overall analysis, and it was the cumulative effect of all the factors
3  that led to the ALJ's decision.  The Court concludes that the ALJ has supported her decision
4  to discredit Plaintiff's allegations with specific, clear and convincing reasons and, therefore,
5  the Court finds no error.

6  **B.     Medical Source Opinion Evidence**

7        Plaintiff contends that the ALJ erred by failing to properly weigh the medical source
8  opinions of treating physician Marie Gronley, M.D., and examining physician Jacqueline
9  Worsley, Psy.D.

10        "The ALJ is responsible for resolving conflicts in the medical record."  Carmickle v.
11  Comm'r, Soc. Sec. Admin., 533 F.3d at 1164.  Such conflicts may arise between a treating
12  physician's medical opinion and other evidence in the claimant's record.  In weighing
13  medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three
14  types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining
15  physicians, who examine but do not treat the claimant; and (3) non-examining physicians,
16  who neither treat nor examine the claimant.  See Lester, 81 F.3d at 830.  The Ninth Circuit
17  has held that a treating physician's opinion is entitled to "substantial weight."  Bray, 554 F.3d
18  at 1228 (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)).  A treating
19  physician's opinion is given controlling weight when it is "well-supported by medically
20  accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other
21  substantial evidence in [the claimant's] case record."  20 C.F.R. § 404.1527(d)(2).  On the
22  other hand, if a treating physician's opinion "is not well-supported" or "is inconsistent with
23  other substantial evidence in the record," then it should not be given controlling weight.  Orn,
24  495 F.3d at 631.

25        If a treating physician's opinion is not contradicted by the opinion of another
26  physician, then the ALJ may discount the treating physician's opinion only for "clear and
27  convincing" reasons.  See Carmickle, 533 F.3d at 1164 (quoting Lester, 81 F.3d at 830).  If
28  a treating physician's opinion is contradicted by another physician's opinion, then the ALJ

- 9 -

1 may reject the treating physician's opinion if there are "specific and legitimate reasons that
2 are supported by substantial evidence in the record." Id. (quoting Lester, 81 F.3d at 830).

Since it appears that Drs. Gronley and Worsley's opinions were contradicted by the state agency physicians, as well as, other objective medical evidence of record, the specific and legitimate standard applies.

Historically, the courts have recognized the following as specific, legitimate reasons for disregarding a treating or examining physician's opinion: conflicting medical evidence; the absence of regular medical treatment during the alleged period of disability; the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain; and medical opinions that are brief, conclusory, and inadequately supported by medical evidence. See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Flaten v. Secretary of Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); Fair, 885 F.2d at 604.

The Court having reviewed the ALJ's evaluation of the objective medical evidence finds that the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of Drs. Gronley and Worsley. (Tr. at 27.) The ALJ rejected Dr. Gronley's opinion stating that the GAF assigned by Dr. Gronley was in conflict with Plaintiff's ability to work at a semi-skilled job the prior year. The ALJ also asserted that objective medical evidence did not support Dr. Gronley's rating of Plaintiff's social abilities. In support, the ALJ cites the lay witness testimony of Ria Rebel who "reported that the claimant gets along okay with authority figures" and the lay witness testimony of Mary Atherton who "reported that she spends time with the claimant once per week by shopping, talking and having lunch." (Tr. at 27.) The ALJ's assertions are improper because Plaintiff's ability to work at a semi-skilled job the year before she became ill has no bearing on Dr. Gronley's opinion as to how the psychiatric impairment effected functioning a year later. Further, in weighing the treating physician's opinion, the ALJ does not explain how lay witness testimony represents "objective medical evidence" conflicting with Dr. Gronley's opinion of Plaintiff's ability to sustain social function in a work setting.

1    Regarding Dr. Worsley, the ALJ gave "some weight" to her assessment, but found
2 "the claimant is not as limited as Dr. Worsley reports," referring to the "paragraph B"
3 discussion in another part of the decision. (Tr. at 27.) However, the ALJ's "paragraph B"
4 discussion fails to set forth sufficient reasons for discounting Dr. Worsley's opinion.

5    Thus, the Court finds that the ALJ erred in her evaluation of the objective medical
6 evidence. Moreover, the ALJ's error in this regard does not constitute harmless error. See
7 Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[A]n ALJ's error is harmless where
8 it is 'inconsequential to the ultimate nondisability determination.'") (citations omitted).

9    Therefore, in light of the fact that the Court finds that the ALJ failed to provide
10 specific, legitimate reasons based on substantial evidence in the record for rejecting the
11 opinions of Drs. Gronley and Worsley, and the fact that the ALJ relied upon an erroneous
12 evaluation of the objective medical evidence to derive Plaintiff's residual functional capacity
13 assessment, in part, the Court declines to reach Plaintiff's remaining arguments as they are
14 impacted by the assessment. The Court will order that the decision of the ALJ be vacated
15 and the case be remanded.

16    "[R]emand for further proceedings is appropriate where there are outstanding issues
17 that must be resolved before a determination can be made, and it is not clear from the record
18 that the ALJ would be required to find claimant disabled if all the evidence were properly
19 evaluated." Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012) (citing Vasquez v. Astrue,
20 572 F.3d 586, 593 (9th Cir. 2009)). "[T]he proper course, except in rare circumstances, is
21 remand to the agency for additional investigation or explanation." INS v. Ventura, 537 U.S.
22 12, 16 (2002) (per curiam). The Ninth Circuit has held that when "additional proceedings
23 can remedy defects in the original administrative proceeding, a social security case should
24 be remanded." Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990) (remanding "to the
25 Secretary for proper consideration of step three equivalence"). Here, the record contains
26 evidentiary conflicts that make an award of benefits inappropriate and require further
27 evaluation on remand. Specifically, remand is appropriate for a renewed residual functional
28

capacity assessment, which explicitly considers the opinions and treatment records of Drs. Gronley and Worsley in the ALJ's examination of the objective medical evidence.

### V. CONCLUSION

For the reasons discussed in this Order, the Commissioner's decision will be vacated and this matter will be remanded for further administrative proceedings consistent with this Order.

Accordingly,

**IT IS ORDERED** that the Commissioner's decision is **VACATED** and this matter is **REMANDED** to the Commissioner for further administrative proceedings as set forth in this Order;

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly.

DATED this 30th day of September, 2015.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge